# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRADLEY W. CORDES, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-2104-LTS <br><br> **REPORT AND RECOMMENDATION** |

The claimant, Bradley W. Cordes (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that he was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 13). Claimant was born in 1978, and therefore was 30 years old on the date of the alleged onset of disability and 36 years old at the time of the ALJ's decision. (AR 23, 65).[1] Claimant completed the 11th grade. (AR 67). Claimant has past relevant work as a shift manager at a restaurant, pizza

---

[1] "AR" refers to the administrative record below.

delivery driver, produce worker, cabinet assembler, store manager, and construction laborer.  (AR 68-71).

On February 5, 2013, claimant applied for disability insurance benefits, alleging his disability began on March 1, 2009, due to a bulging disc, hip weakness, bilateral numbness, and depression.  (AR 318, 322).

In 2013, the Social Security Administration denied claimant's disability application initially and on reconsideration.  (AR 168-171; 173-76).

Claimant requested a hearing and on January 27, 2015, ALJ Jo Ann L. Draper conducted a hearing on claimant's application.  (AR 58-103).  On March 31, 2015, the ALJ found claimant was not disabled.  (AR 12-25).  On July 8, 2016, the Appeals Council denied claimant's request for review.  (AR 1-6).  The ALJ's decision, thus, became the final decision of the Commissioner.  20 C.F.R. § 404.981.

On September 6, 2016, claimant filed a complaint in this Court.  (Doc. 3). Between March and April 2017, the parties briefed the issues.  (Docs. 14, 15 & 16).  On April 11, 2017, the Court deemed this case fully submitted and ready for decision.  (Doc. 17).  On the same day, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in

significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one

3

of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. (*Id.*). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about

4

the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since March 1, 2009, the alleged onset date of his disability. (AR 14).

At Step Two, the ALJ found that claimant had the severe impairments of "degenerative disc disease at L5, status post surgery" and "depressive disorder/generalized anxiety disorder." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 14-15).

At Step Four, the ALJ found claimant had residual functional capacity to perform sedentary work, with following additional functional limitations that claimant:

> [M]ust change postural positions every thirty minutes, rising from seated to stand or walk for two to three minutes before sitting again, all within the work area. He could only occasionally climb, balance, stoop or crouch. He could not kneel or crawl. He could have no more than occasional exposure to cold and no exposure to hazardous conditions such as heights or moving machinery. He could never climb ropes, ladders, or scaffolds. He is limited to tasks learned in thirty days or less, involving no more than simple work related decisions, requiring little to no judgment and only occasional workplace changes.

(AR 15-16). Also at Step Four, the ALJ determined that claimant was unable to perform any past relevant work. (AR 23).

At Step Five, the ALJ determined that based on claimant's age and limited education, and with his residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could perform, including order

5

clerk, assessor, and telephone quote clerk. (AR 24-25). Therefore, the ALJ did not proceed to Step Five, and found claimant was not disabled. (AR 25).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

6

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted)).

## V. DISCUSSION

Claimant argues that the ALJ's residual functional capacity determination at Step Four was flawed because: (1) the ALJ failed to evaluate properly the work-related limitations from treating physician Dr. Meredith Christ (Doc. 16, at 4-14); (2) the ALJ failed to evaluate properly the work-related limitations from treating psychiatrist Dr. Muhammad Chowdhry and Advanced Registered Nurse Practitioner (ARNP) Vicki Boling (Doc. 14, at 15-21); and (3) the ALJ's residual functional capacity assessment was not supported by substantial medical evidence from a treating or examining source (Doc. 14, at 21-22). I will address each of these issues in turn.

### A. The ALJ's Evaluation of Treating Physician's Opinion

Claimant argues the ALJ erred in failing to give the work-limitation opinions of treating physician Dr. Meredith Christ, sufficient weight. (Doc. 14, at 4-14). Claimant argues that Dr. Christ concluded that claimant had work-related limitations that would have resulted in a disability finding. (Doc. 14, at 5). Claimant argues that Dr. Christ's opinions were entitled to controlling weight because they were well-supported by the medical evidence and not inconsistent with other substantial evidence. (Doc. 14, at 6-14).

Dr. Christ treated claimant from April 24, 2014, through the time she rendered her opinion on January 23, 2015. (AR 616-20). Dr. Christ stated that she saw claimant every two or three months during that time period for low back pain. (AR 616).[2] In a January 2015 Medical Source Statement, Dr. Christ described claimant's symptoms as:

> Continuous pain, inability to independently tie shoes, depression & anxiety secondary to pain; in ability to maintain one position due to pain. Pain & numbness right leg & foot. Fatigue.

(AR 616). Dr. Christ described claimant's pain thus:

> Main area of pain is low back & down right leg. Leg will give out randomly causing difficulty w/ ambulation. Pain rates 9-10/10 majority of the time. Sitting, standing, & walking increases pain.

(*Id.*). Dr. Christ also indicated that claimant had neuro-anatomic distribution of pain. (*Id.*). Dr. Christ identified reduced range of motion (indicating claimant could not flex his low back far enough to reach his feet, even from a sitting position), positive supine straight leg raising on his right leg at 30° and left leg at 45°, positive seated straight leg

---

[2] The medical records, however, show that she saw claimant only three times: April 24, 2014, June 9, 2014, and August 11, 2014. (AR 534-39). An MRI was performed on August 20, 2014. (AR 532).

8

raising test, abnormal gait, mild sensory loss on the right side, reflex loss on the right side, and motor loss. (AR 617). Dr. Christ indicated that claimant's medication caused claimant fatigue, impaired his mental clarity, and caused mild urinary retention issues. (*Id.*).

With regard to work-related limitations, Dr. Christ opined that claimant could only walk ½ city block without rest or severe pain, could sit for only 15 minutes and stand for only 20 minutes at one time. (AR 617). Dr. Christ opined that claimant could stand or walk less than 2 hours and sit for about 2 hours in an eight-hour workday. (*Id.*). Dr. Christ further opined that claimant needed a job that permitted him to shift positions at will, needed periods when he could walk around during work, and would need a cane when standing or walking. (AR 618). Dr. Christ also opined that claimant would need unscheduled 20- to 30-minute breaks every ten minutes. (*Id.*). Dr. Christ opined that claimant could rarely lift 10 pounds and never any more, and could never twist, stoop (bend), crouch or squat, or climb ladders or stairs. (*Id.*). Dr. Christ opined that claimant would be "off task" more than 25% of the time, is incapable of even "low stress" work, and would need to be absent from work more than four days per month as the result of impairments or treatment. (AR 619).

The ALJ noted that Dr. Christ treated claimant for less than a year before rendering her opinion. (AR 21). The ALJ accurately summarized Dr. Christ's opinion as set forth above. (*Id.*). The ALJ gave "[l]imited weight" to Dr. Christ's opinions, however, because they were "not consistent with the medical records as a whole" and were not supported by Dr. Christ's "own attached objective imaging." (*Id.*). The ALJ then described in some detail the results of an MRI of claimant's lumbar spine taken in August 2014 that Dr. Christ attached to her opinion. (*Id.*). In short, the ALJ noted that the MRI showed only "mild narrowing of interspace" between two discs, and that the imaging "appeared much the same as it did at the time of the prior examinations." (AR

9

21-22). It is important to note that in her decision the ALJ did not arrive at her own interpretation of the MRI, but, rather, was quoting from the MRI report signed by Dr. Greg E. Raeckar DO and Dr. Christ. (AR 621).

An ALJ must determine a claimant's residual functional capacity based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (alterations in original) (citation and internal quotation marks omitted). In determining a claimant's residual functional capacity, it is the ALJ's function to weigh conflicting evidence and to resolve disagreements among physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal citation and quotation marks omitted). A treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight."); *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012). In addition, "[a] treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions," such as when the opinion is inconsistent with contemporaneous treatment notes. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted). Similarly, an ALJ may discount the weight given to a treating physician's opinion if the treatment notes simply do not support the limitations endorsed in the opinion. *See Cline*

10

*v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (holding that a treating physician's opinion is entitled to less weight if it is unsupported by the physician's own records).

In this case, the ALJ correctly found the treating doctor's medical records simply did not support the limitations she imposed on the checklist form. Dr. Christ's treatment notes provide no basis to support the extreme limitations she endorsed on the checkbox form. Indeed, the MRI report she attached reflected only mild narrowing of interspace that "imping[ed] upon the proximal right S1 nerve root sleeve," but with "[n]o worrisome marrow signal changes," "[n]o vertebral compression," and "no remarkable change since the prior MR examination in January last year." (AR 621).[3] In assessing the weight to be given to Dr. Christ's opinion, the ALJ also properly considered that Dr. Christ saw claimant for less than a year. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." (internal citation and quotation marks omitted)).

Claimant argues that the medical records support the limitations endorsed by Dr. Christ, citing to reports of Dr. Christ and other physicians from 2011 to 2014. (Doc. 14, at 8-13). These records do not support claimant's argument. The records show that claimant underwent back surgery in 2011 and follow-up treatment. (AR 443, 457, 461). Claimant had a neurosurgical evaluation on February 26, 2013, with Dr. Jackson at UIHC. Dr. Jackson's impression was that claimant had "mild L5 and severe S1 radiculopathy." (AR 494). Lumbar MRI ordered and reviewed by Dr. Jackson on February 26, 2013, showed "postoperative changes at L5-S1 with residual disc herniation at this level." (AR 493). As noted, however, in 2014, the lumbar MRI showed only

---

[3] Claimant is simply wrong when he alleges that "the ALJ relied on a bare allegation [of inconsistency] with no citation to the record." (Doc. 14, at 13). The ALJ cited the MRI report Dr. Christ attached to her opinion. (AR 21).

"mild spinal canal narrowing at L4-5" and at L5-S1 disc protrusion and epidural scarring that impinged on the S1 nerve root sleeve. (AR 621). Dr. Christ's very limited medical records from the three times she saw claimant (AR 532-39) reflect largely nothing more than claimant's subjective complaints and the single MRI already discussed. Indeed, on June 9, 2014, Dr. Christ noted that she thought claimant's "most recent bout of back pain is more muscular than anything else." There are no tests or other objective basis in Dr. Christ's notes to support the extreme work-related limitations she noted in her opinion. Although Dr. Christ referenced positive leg raising in her opinion (AR 617), there is no reference to conducting such tests in her treatment notes. (AR 532-39). Although Dr. Christ referenced "abnormal gait" in her opinion (AR 617), her treatment notes are inconsistent, noting a limp in April 2014 (AR 539), a "pretty normal gait" in June 2014 (AR 536), and a reference that claimant "walks fairly well once he gets going" in August 2014. (AR 534). In Dr. Christ's Medical Source Statement she noted reflex loss (AR 617), but her notes make no reference to claimant's reflexes. (AR 532-39). Although claimant saw a number of other doctors in 2013 and 2014 regarding complaints about back and leg pain, none of those medical records reflect work-related limitations endorsed by any other physician. (AR 511-28, 541-44, 547-48, 550-53).

The ALJ also considered and gave "partial weight" to state agency physicians Matthew Byrnes, D.O., and Tracey Larrison, D.O. (AR 23). Both doctors concluded claimant could carry 20 pounds occasionally and ten pounds frequently, could stand and walk for two hours and sit for about six hours in an eight-hour workday, and could occasionally push, pull, balance, stoop, crouch, and climb ramps and stairs. (AR 130-33, 144-48). The only other relevant limitations these doctors found appropriate were that claimant never kneel, crawl, or climb ladders, ropes, or scaffolds. (*Id.*).

In summary, I find there is substantial evidence in the record as a whole for the ALJ to have afforded Dr. Christ's opinion limited evidentiary weight. Therefore, I find

the ALJ did not err when she declined to include Dr. Christ's work-related limitations in claimant's residual functional capacity assessment.

### B. *The ALJ's Evaluation of Examining Psychiatrist's Opinion*

Claimant argues that the ALJ's residual functional capacity assessment was flawed because it did not incorporate limitations found by examining psychiatrist Dr. Muhammad Chowdhry and Vicki Boling, ARNP. (Doc. 15, at 15-21). Claimant argues that Dr. Chowdhry and Ms. Boling provided opinions regarding claimant's mental limitations that were supported by the medical records, but the ALJ did not include those limitations in her residual functional capacity assessment. Claimant argues that the ALJ failed to provide an adequate explanation for discounting those limitations. (*Id.*).

Claimant was seen at the Black Hawk-Grundy Mental Health Center, Inc. (the Center), from February 3, 2014, through October 14, 2014. (AR 557-606). On December 10, 2014, the Center provided a Mental Medical Source Statement signed by Dr. Chowdhry and Ms. Boling. (AR 608-613). Claimant was first seen on February 3, 2014, by social worker Joyce Andresen and the records indicate claimant was diagnosed with Depressive Disorder, Panic Disorder, and Generalized Anxiety Disorder. (AR 557-58). The notes indicated that claimant stated his wife referred him to the Center, but indicated that "[h]is attorney also wanted him to get evaluated, because he is applying for disability." (AR 557). Over the course of the following eight months, social worker Richard Anfinson saw claimant a dozen times and Ms. Boling saw claimant on seven occasions. (AR 559-606). The appointments with Mr. Anfinson lasted approximately one hour, while the appointments with Ms. Boling lasted approximately twenty minutes. (*Id.*). Dr. Chowdhry never saw claimant. By the time of the last appointment in October 2014, claimant's examination showed normal thought process, normal associations, good judgment and insight, no abnormal thoughts, normal orientation, adequate memory, normal attention/concentration, normal language, adequate fund of knowledge,

appropriate and "better" mood, and increased sleep. (AR 605). The notes indicate that claimant's status was improving. (*Id.*).

The Mental Medical Source Statement indicated that claimant would find speed, precision, complexity, deadlines, making decisions, completing tasks, dealing with the public, being criticized by supervisors, remaining at work for a full day, and fear of failure at work stressful. (AR 609). It indicated that claimant would miss more than four days per month as a result of claimant's impairments and treatment. (*Id.*). The statement noted that, in addition to his mental issues, claimant's pain and the effect of psychiatric medication would make it difficult for claimant to work on a sustained basis. (*Id.*). The statement also listed a number of symptoms, including decreased energy, suicidal ideations, anxiety, difficulty concentrating, and short-term memory impairment. (AR 610). Regarding mental abilities and aptitudes needed for unskilled work, the statement indicated that claimant would be seriously limited in his ability to maintain regular attendance. The statement also indicated that claimant would be unable to meet competitive standards for completing a normal workday without interruptions from his symptoms and for dealing with stress, and no ability to perform at a consistent pace without an unreasonable number of rest periods. (AR 611). As for semi-skilled or skilled work, the statement indicated claimant would be seriously limited in his ability to deal with the stress of such work. (AR 612).

The ALJ summarized claimant's mental health history. The ALJ noted that claimant was examined by a licenses psychologist, Dr. Carroll Roland, in March 2013, who found that claimant's memory was intact, his thoughts were goal directed, he did not exhibit any thought abnormalities, and reported "fleeting passive suicidal ideation." (AR 19). The ALJ noted that the psychologist found claimant had become increasingly depressed secondary to mounting financial pressures, but that any limitations on his ability to work would be pain-related and not due to mental health issues. (AR 20). Dr.

14

Roland assessed claimant with a Global Assessment of Functioning (GAF) of 70, reflecting mild symptoms. (*Id.*). The ALJ then summarized the records and treatment that claimant received at Black Hawk-Grundy Mental Health Center. (*Id.*). The ALJ also summarized the Medical Source Statement submitted by Dr. Chowdhry and Ms. Boling. (AR 21). The ALJ gave "some weight" to the opinions reflected in that statement as it pertained to claimant's mental health issues, but "little weight" to limitations based on claimant's complaints of physical pain because "this was not the primary purpose of their treatment interaction with the claimant and not within their treating specialty." (*Id.*). In her residual functional capacity assessment, the ALJ included the following mental health-related limitations:

> [Claimant] is limited to tasks learned in thirty days or less, involving no more than simple work related decisions, requiring little to no judgment and only occasional workplace changes.

(AR 15-16).

Although an ALJ must consider medical opinion evidence in formulating a claimant's residual functional capacity, the ALJ has a duty to formulate the RFC based on all of the relevant and credible evidence of record. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). This evidence includes a claimant's daily activities. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) (finding an ALJ properly discounted the opinions of a medical source because claimant's activities of daily living did not reflect the physical limitations found). Thus, an "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). When determining the RFC, "'[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute

substantial evidence.'" *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (quoting *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). Regardless of the source of the opinion, however, an ALJ must explain and give good reasons for the weight accorded to the various opinions. 20 C.F.R. § 404.1527(c)(2).

I find that substantial evidence supported the ALJ's decision to afford the opinions reflected in the Mental Medical Source Statement some weight with respect to mental health limitations and little weight as to opinions based on claimant's pain complaints. First, the ALJ was fully justified in giving little weight due to the fact that Dr. Chowdhry signed off on the Mental Medical Source Statement when the records show Dr. Chowdhry did not treat claimant. Additionally, there is no indication of what, if any, review of the records he made prior to signing the statements. That Dr. Chowdhry's signature is simply a formality is reflected in the handwritten note indicating that a co-signature from an MD was needed on the form. (AR 613).

Moreover, the ALJ was justified in assigning different weight to mental health issues versus medical issues, given the specialty and treatment provided at the Center. As for claimant's mental health, the statement reflects that claimant's therapy and medication had been a "good combination" and that claimant's mental impairments were, as a result of this treatment, "under better control." (AR 21, 608). Ms. Boling's notes reflected that claimant's presentation on each of the visits was unremarkable other than symptoms of depression. (AR 563-64, 571, 578, 585, 595, 600, 605). Ms. Boling's notes reflected on each occasion that claimant's condition was either stable, unchanged, or improving." (AR 571, 578, 585, 595, 600, 605). These notes contrast sharply with the severe work-related limitations endorsed in the Mental Medical Source Statement. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (noting an ALJ may discount treating physician's opinion if she has offered inconsistent opinions). The ALJ could

16

properly conclude that the work-related impairments identified in the statement were tied more to claimant's physical pain than to claimant's mental health. (AR 609).

The ALJ could also give little weight to the Center's Mental Medical Source Statement because it was inconsistent with the opinions of other mental health professionals. Consultative psychologist Carrol Roland, Ph.D., examined claimant on March 28, 2013. (AR 497-501). Dr. Roland diagnosed claimant with "Major Depressive Disorder, single episode with moderate to severe intensity." (AR 501). Dr. Roland assessed claimant with a GAF score of 70, and determined that any "deterrent to full time competitive employment appears to be chronic pain and physical limitations" and not to mental illness. (*Id.*). State agency psychological consultants Myrna Tashner, Ed.D. and Dee Wright, Ph.D., concluded that claimant's mental impairments resulted in only mild restrictions of activities in daily living, social functioning, and maintaining concentration, persistence, and pace. (AR 129-30, 142-43).

Finally, the ALJ considered the low GAF scores Ms. Boling found applicable to claimant, but properly discounted the importance of these subjective assessments. (AR 20-21). *See Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (noting that GAF scores have limited importance).

In summary, I find there is substantial evidence in the record as a whole for the ALJ to have afforded the Mental Medical Source Statement with "some weight" in relation to mental health opinions and "little weight" in relation to opinions based on claimant's subjective complaints of physical pain. Therefore, I find the ALJ did not err when she declined to include the Mental Medical Source Statement's work-related limitations in claimant's residual functional capacity assessment.

### C. *The ALJ's Residual Functional Capacity Assessment*

Claimant argues that the ALJ's residual functional capacity assessment was flawed because "it is not supported by substantial medical evidence from a treating or examining

17

source." (Doc. 14, at 21-22). Here, claimant argues that the ALJ's residual functional capacity assessment lacked medical support because the ALJ "did not rely on the opinions" of Dr. Christ, Dr. Chwodhry/Ms. Boling [sic], Dr. Byrnes, or Dr. Larrison,". (*Id.*). Claimant demands the Court reverse the ALJ's decision and remand the case "for further development of the record." (Doc. 14, at 22).

A claimant has the burden of proving his disability. *Stormo*, 377 F.3d at 806. It is the claimant's burden to prove his residual functional capacity. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2001). Where a claimant argues that an ALJ failed to develop the record, the claimant carries the burden of showing he was prejudiced or treated unfairly by the ALJ's development of the record. *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). Here, claimant has failed to carry his burdens.

First, claimant overstates the record when he asserts the ALJ did not consider the opinions of Dr. Christ, Dr. Chowdhry, Ms. Boling, Dr. Byrnes, and Dr. Larrison. The ALJ considered the opinions of all of these sources; the ALJ gave "some," "limited," "partial," and "little" weight to these opinions in light of the medical records and the record as a whole. Second, claimant ignores the ALJ's reliance on Dr. Delbridge as a treating source. (AR 21-22). Finally, the ALJ relied, as she may, upon non-examining consultants. *Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014).

Ultimately, the ALJ's residual functional capacity "must be supported by some medical evidence," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. The ALJ must determine a claimant's residual functional capacity assessment based on all of the relevant medical and non-medical evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Courts will not reverse an ALJ's residual functional capacity assessment where, as here, the record was reasonably complete and contained sufficient evidence from which the ALJ could make the assessment. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).

Accordingly, I find the ALJ did not err and that there was substantial evidence in the record as a whole to support her residual functional capacity assessment.

## VI. CONCLUSION

For the reasons set forth herein, I find the ALJ acted well within the zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 31st day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa