**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

BRADLEY W. CORDES,

              Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

              Defendant.

No. 16-CV-2104-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.     INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 18. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Bradley W. Cordes' application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Cordes filed timely objections to the R&R. Doc. No. 19. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.     APPLICABLE STANDARDS

### A.     *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).  The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true "even if [the court] might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

## B.    *Review of Report and Recommendation*

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation.  *Id.*  The Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3D 803, 815 (8th Cir. 1994).  As this court has previously stated, "[e]ven if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all . . . ." *Lynch v. Astrue*, 687 F. Supp. 2d 841 (2010) (citing *Coop. Fin. Assoc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996)).  This court will provide de novo review of all issues that might be addressed by any objection.    *Id.*

### III.    THE R&R

Cordes alleged disability due to degenerative disc disease, depressive disorder and generalized anxiety disorder.  AR 14.  In support of his claim, Cordes submitted a physical residual functional capacity (RFC) opinion drafted by his treating physician, Dr. Meredith Christ, M.D., along with a mental RFC opinion by Dr. Muhammad Chowdhry, M.D., and Vicki Boling, ARNP (the Chowdhry-Boling opinion).  At issue are the ALJ's evaluation of these medical opinions, as well as whether there was substantial evidence in the record as a whole in support of the ALJ's RFC determination.

After setting forth the relevant facts, Judge Williams summarized the ALJ's assessment of Dr. Christ's opinion as follows:

Dr. Christ treated claimant from April 24, 2014, through the time she rendered her opinion on January 23, 2015. (AR 616-20). Dr. Christ stated that she saw claimant every two or three months during that time period for low back pain. (AR 616). In a January 2015 Medical Source Statement, Dr. Christ described claimant's symptoms as:

> Continuous pain, inability to independently tie shoes, depression & anxiety secondary to pain; inability to maintain one position due to pain. Pain & numbness right leg & foot. Fatigue.

(AR 616). Dr. Christ described claimant's pain thus:

> Main area of pain is low back & down right leg. Leg will give out randomly causing difficulty w/ ambulation. Pain rates 9-10/10 majority of the time. Sitting, standing, & walking increases pain.

(*Id.*). Dr. Christ also indicated that claimant had neuro-anatomic distribution of pain. (*Id.*). Dr. Christ identified reduced range of motion (indicating claimant could not flex his low back far enough to reach his feet, even from a sitting position), positive supine straight leg raising on his right leg at 30° and left leg at 45°, positive seated straight leg raising test, abnormal gait, mild sensory loss on the right side, reflex loss on the right side, and motor loss. (AR 617). Dr. Christ indicated that claimant's medication caused claimant fatigue, impaired his mental clarity, and caused mild urinary retention issues. (*Id.*).

With regard to work-related limitations, Dr. Christ opined that claimant could only walk ½ city block without rest or severe pain, could sit for only 15 minutes and stand for only 20 minutes at one time. (AR 617). Dr. Christ opined that claimant could stand or walk less than 2 hours and sit for about 2 hours in an eight-hour workday. (*Id.*). Dr. Christ further opined that claimant needed a job that permitted him to shift positions at will, needed periods where he could walk around during work, and would need a cane when standing or walking. (AR 618). Dr. Christ also opined that claimant would be "off task" more than 25% of the time, is incapable of even "low stress" work, and would need to be absent from work more than four days per month as the result of impairments or treatment. (AR 619).

The ALJ noted that Dr. Christ treated claimant for less than a year before rendering her opinion. (AR 21). The ALJ accurately summarized Dr. Christ's opinion as set forth above. (*Id.*). The ALJ gave "[l]imited weight" to Dr. Christ's opinions, however, because they were "not consistent with the medical records as a whole" and were not supported by Dr. Christ's "own attached objective imaging." (*Id.*). The ALJ then described in some detail the results of an MRI of claimant's lumbar spine taken in August 2014 that Dr. Christ attached to her opinion. (*Id.*). In short, the ALJ noted that the MRI showed only "mild narrowing of interspace" between two discs, and that the imaging appeared much the same as it did at the time of the prior examinations. It is important to note that in her decision the ALJ did not arrive at her own interpretation of the MRI, but, rather, was quoting from the MRI report signed by Dr. Greg E. Raeckar DO and Dr. Christ. (AR 621).

\*\*\*

In this case, the ALJ correctly found the treating doctor's medical records simply did not support the limitations she imposed on the checklist form. Dr. Christ's treatment notes provide no basis to support the extreme limitations she endorsed on the checkbox form. Indeed, the MRI report she attached reflected only mild narrowing of interspace that "imping[ed] upon the proximal S1 nerve root sleeve," but with "[n]o worrisome marrow spinal changes," "[n]o vertebral compression," and "no remarkable change since the prior MR examination in January last year." (AR 621). In assessing the weight to be given to Dr. Christ's opinion, the ALJ also properly considered that Dr. Christ saw claimant for less than a year. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." (internal citation and quotation marks omitted)).

\*\*\*

Dr. Christ's very limited medical records from the three times she saw claimant (AR 532-39) reflect largely nothing more than claimant's subjective complaints and the single MRI already discussed. Indeed, on June 9, 2014, Dr. Christ noted that she thought claimant's most recent bout of back pain is more muscular than anything else." There are no tests or other objective basis in Dr. Christ's notes to support the extreme work-related limitations she noted in her opinion. Although Dr. Christ referenced positive leg raising in her opinion (AR 617), there is no reference to

conducting such tests in her treatment notes. (AR 532-39). Although Dr. Christ referenced "abnormal gait" in her opinion (AR 617), her treatment notes are inconsistent, noting a limp in April 2014 (AR 539), a "pretty normal gait" in June 2014 (AR 536), and a reference that claimant "walks fairly well once he gets going" in August 2014. (AR 534). In Dr. Christ's Medical Source Statement she noted reflex loss (AR 617) but her notes make no reference to claimant's reflexes. (AR 532-39). Although claimant saw a number of other doctors in 2013 and 2014 regarding complaints about back and leg pain, none of those medical records reflect work-related limitations endorsed by any other physician. (AR 511-28, 541-44, 547-48, 550-53).

Doc. No. 18 at 9-12. Judge Williams concluded that "there is substantial evidence in the record as a whole for the ALJ to have afforded Dr. Christ's opinion limited evidentiary weight." *Id.* at 12. As a result, Judge Williams determined that the ALJ did not err in declining to include Dr. Christ's work-related limitations in Cordes' RFC. *Id.* at 13.

Turning to the Chowdhry-Boling opinion, Judge Williams summarized the ALJ's analysis as follows:

Claimant was seen at the Black Hawk-Grundy Mental Health Center, Inc. (the Center), from February 3, 2014, through October 14, 2014. (AR 557-606). On December 10, 2014, the Center provided a Mental Medical Source Statement signed by Dr. Chowdhry and Ms. Boling. (AR 608-613). Claimant was first seen on February 3, 2014, by social worker Joyce Andresen and the records indicate claimant was diagnosed with Depressive Disorder, Panic Disorder, and Generalized Anxiety Disorder. (AR 557-58). The notes indicated that claimant stated his wife referred him to the center, but indicated that "[h]is attorney also wanted him to get evaluated, because he is applying for disability." (AR 557). Over the course of the following eight months, social worker Richard Anfinson saw claimant a dozen times and Ms. Boling saw claimant on seven occasions. (AR 559-606). The appointments with Mr. Anfinson lasted approximately one hour, while the appointments with Ms. Boling lasted approximately twenty minutes. (*Id.*). Dr. Chowdhry never saw claimant. By the time of the last appointment in October 2014, claimant's examination showed normal thought process, normal associations, good judgment and insight, no abnormal thoughts, normal orientation, adequate memory, normal attention/concentration, normal language, adequate fund of knowledge, appropriate and "better"

mood, and increased sleep. (AR 605). The notes indicate that claimant's status was improving. (*Id.*).

The Mental Medical Source Statement indicated that claimant would find speed, precision, complexity, deadlines, making decisions, completing tasks, dealing with the public, being criticized by supervisors, remaining at work for a full day, and fear of failure at work stressful. (AR 609). It indicated that claimant would miss more than four days per months as a result of claimant's impairments and treatment. (*Id.*). The statement noted that, in addition to his mental issues, claimant's pain and the effect of psychiatric medication would make it difficult for claimant to work on a sustained basis. (*Id.*). The statement also listed a number of symptoms, including decreased energy, suicidal ideations, anxiety, difficulty concentrating, and short-term memory impairment. (AR 610). Regarding mental abilities and aptitudes needed for unskilled work, the statement indicated that claimant would be seriously limited in his ability to maintain regular attendance. The statement also indicated that claimant would be unable to meet competitive standards for completing a normal workday without interruptions from his symptoms and for dealing with stress, and no ability to perform at a consistent pace without an unreasonable number of reset periods. (AR 611). As for semi-skilled or skilled work, the statement indicated claimant would be seriously limited in his ability to deal with the stress of such work. (AR 612).

The ALJ summarized claimant's mental health history. The ALJ noted that claimant was examined by a license[d] psychologist, Dr. Carroll Roland, in March 2013, who found that claimant's memory was intact, his thoughts were goal directed, he did not exhibit any thought abnormalities, and reported "fleeting passive suicidal ideation." (AR 19). The ALJ noted that the psychologist found claimant had become increasingly depressed secondary to mounting financial pressures, but that any limitations on his ability to work would be pain-related and not due to mental issues. (AR 20). Dr. Roland assessed claimant with a Global Assessment of Functioning (GAF) of 70, reflecting mild symptoms. (*Id.*). The ALJ then summarized the records and treatment that claimant received at [the center]. (*Id.*). The ALJ also summarized the Medical Source Statement submitted by Dr. Chowdhry and Ms. Boling. (AR 21). The ALJ gave "some weight" to the opinions reflected in that statement as it pertained to claimant's mental health issues, but "little weight" to limitations based on claimant's complaints of physical pain because "this was not the primary purpose of

their treatment interaction with the claimant and not within their treating specialty." (*Id.*). In her residual functional capacity assessment, the ALJ included the following mental-health related limitations:

> [Claimant] is limited to tasks learned in thirty days or less, involving no more than simple work related decisions, requiring little to no judgment and only occasional workplace changes.

(AR 15-16).

\*\*\*

I find that substantial evidence supported the ALJ's decision to afford the opinions reflected in the Mental Medical Source Statement some weight with respect to mental health limitations and little weight as to opinions based on claimant's pain complaints. First, the ALJ was fully justified in giving little weight due to the fact that Dr. Chowdhry signed off on the Mental Medical Source Statement when the records show Dr. Chowdhry did not treat claimant. Additionally, there is no indication of what, if any, review of the records he made prior to signing the statements. That Dr. Chowdhry's signature is simply a formality is reflected in the handwritten note indicating that a co-signature from an MD was needed on the form. (AR 613).

Moreover, the ALJ was justified in assigning different weight to mental health issues versus medical issues, given the specialty and treatment provided at the Center. As for claimant's mental health, the statement reflects that claimant's therapy and medication had been a "good combination" and that claimant's mental impairments were, as a result of his treatment, "under better control." (AR 21, 608). Ms. Boling's notes reflected that claimant's presentation on each of the visits was unremarkable other than symptoms of depression. (AR 563-64, 571, 578, 585, 595, 600, 605). Ms. Boling's notes reflected on each occasion that claimant's condition was either stable, unchanged, or improving." (AR 571, 578, 585, 595, 600, 605). These notes contrast sharply with the severe work-related limitations endorsed in the Mental Medical Source Statement. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (noting an ALJ may discount treating physician's opinion if she has offered inconsistent opinions). The ALJ could properly conclude that the work-related impairments identified in the statement were tied more to claimant's physical pain than to claimant's mental health. (AR 609).

Doc. No. 18 at 13-16. Judge Williams also found that the ALJ could discount the Chowdhry-Boling opinion on grounds that it was inconsistent with the opinions of other mental health professionals. *Id.* at 17. Judge Williams noted that the consultative psychologist, Dr. Carrol Roland, Ph.D., and the state agency psychological consultants, Myrna Tashner, Ed.D., and Dee Wright, Ph.D., all concluded that the claimant's mental impairments resulted in mild restrictions. *Id.* As a result, Judge Williams concluded that substantial evidence in the record as a whole supported the ALJ's evaluation of the Chowdhry-Boling opinion. *Id.*

Finally, Judge Williams considered the support of the evidence as a whole for the ALJ's RFC. Judge Williams observed that "claimant overstates the record when he asserts the ALJ did not consider the opinions of Dr. Christ, Dr. Chowdhry, Ms. Boling, Dr. Byrnes, and Dr. Larrison." Doc. No. 18 at 18. It was clear from the record that the ALJ gave each of these opinions "some," "limited," "partial," and "little" weight to these opinions, in addition to relying upon the non-examining consultants. *Id.* Judge Williams found that the ALJ's RFC determination was supported by substantial evidence in the record as a whole. *Id.* at 19.

## IV.    DISCUSSION

Cordes objects to Judge Williams' findings that (1) the ALJ properly weighed Dr. Christ's opinion and the Chowdhry-Boling opinion, and (2) the RFC was supported by substantial evidence in the record as a whole. I review those issues de novo.

### A.    *Medical Opinions*

Cordes argues that the ALJ failed to give proper weight to Dr. Christ's opinion and to the Chowdhry-Boling opinion. She contends that both opinions were materially different from those of the state agency consultants and consistent with the medical record as a whole. Doc. No. 14 at 6. From the record, it appears that the ALJ evaluated Dr.

Christ as a treating source, although the ALJ gave her opinion "[l]imited" weight. AR 21. The Chowdhry-Boling opinion was also evaluated as if it were from a treating source, AR 20-21, although the record demonstrates that Dr. Chowdhry never examined Cordes. AR 559-60. As a registered nurse practitioner (ARNP), Ms. Boling is not an acceptable medical source. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d). The ALJ gave the Chowdhry-Boling opinion "some weight." AR 21.

"The ALJ must give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). By contrast, medical opinions which come from consultative sources are generally entitled to less weight. *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir.2003) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole."). This does not necessarily mean that the opinion may be rejected: "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir.2000) (internal quotations and citations omitted); *see also Cowles v. Colvin*, 102 F. Supp. 3d 1042, 1055 (N.D. Iowa 2015). Opinion evidence may also come from health care providers who do not fall within the definition of an "acceptable medical source," such as nurse practitioners. Evidence from "other sources," as defined in 20 C.F.R. sections 404.1513(d) and 416.913(d), may be used to show the severity of the individual's impairments and how they affect the individual's ability to function. The

ALJ must give consideration to such opinions using the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 416.927(c); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). However, any physician's conclusion regarding a claimant's RFC addresses an issue that is reserved for the ALJ. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ's RFC finding must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). If the ALJ's RFC is within the "zone of choice" permitted by the evidence, the court must affirm. *Culbertson*, 30 F.3d at 939. Based on my de novo review, I find that the ALJ erred in evaluating Dr. Christ's opinion and the Chowdhry-Boling opinion.

***Dr. Christ's Opinion.*** Cordes saw Dr. Christ three times between April 24, 2014, and August 11, 2014. AR 534-59. Over the course of those visits, Dr. Christ reviewed medical records from Cordes' previous doctors, conducted objective tests and ordered an MRI. AR 532-539. On January 23, 2015, Dr. Christ submitted a medical source statement opining that Cordes could walk half of a city block without rest or severe pain and could sit for 15 minutes and stand for 20 minutes at a time. AR 617. According to Dr. Christ, Cordes needs a job that allows him to shift positions at will, with periods during which he could walk around. AR 618. Cordes would need a great number of unscheduled breaks, would be off task 25% of the time and would miss four days or more each month. AR 618-19. Cordes could sit for a total of two hours, and stand for less than two hours each day. AR 617. Accepting Dr. Christ's restrictions would lead to a finding that Cordes is disabled. AR 97.

The ALJ afforded Dr. Christ's opinions little weight, explaining that they were "not consistent with the medical records as a whole and are not supported by her own attached objective imaging." AR 21. In support of her finding, the ALJ cited an August 2014 MRI. *Id.* In other parts of her opinion, the ALJ discussed objective findings from Dr. Christ's treatment records, without crediting these tests to Dr. Christ. AR 19. I do not find that substantial evidence supports the ALJ's decision to reject some of Dr. Christ's most extreme limitations. Although Dr. Christ's restrictions are severe, they are largely consistent with the record as a whole, and the ALJ did not identify good reasons to reject her opinion.

The ALJ based her findings in part on inconsistency with the record as a whole. AR 21. However, Cordes' medical record is largely consistent with Dr. Christ's recommendations. Cordes' problems began in 2009, when he was an unrestrained passenger in a motor vehicle accident. AR 72, 455. On December 2, 2011, Dr. Arnold Delbridge, M.D., performed a laminectomy L5-S1 right, removal of markedly-impinging disk material and a foraminotomy of right L5 nerve root. AR 419. The surgery was

ineffective; Cordes returned to treatment with a re-herniated disc at L5-S1 that impinged on the right S1 nerve root. AR 461. Cordes presented to Dr. Delbridge with pain in his lower back, right buttock and a little numbness in his foot and right leg. AR 441, 443-44, 461, 446-49, 466-67, 530. Over time, these symptoms escalated to pain in the lumbar back region with pain over the right buttock that shot down the posterior thigh to the bottom of the foot, with associated cramping in the calf and foot. AR 512. Cordes sought treatment in the form of pain medication, various injections, AR 457, 503-04, 605, and physical therapy. AR 483, 519. Eventually he considered surgery (AR 538, 553, 541, 547-48).

After about a year, the injections and pain medications became ineffective and surgery was not plausible due to the risk of complications and a lack of insurance. Although the ALJ stated that Cordes' course of treatment was conservative, the record indicates surgery was withheld for reasons unrelated to the severity of his impairment. AR 534, 541-44, 548, 553, 605. Cordes cannot be penalized for failing to seek treatment he could not afford. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Miller v. Colvin*, 114 F. Supp. 3d 741, 767 (D.S.D. 2015). Thus, the course of treatment is not inconsistent with Dr. Christ's opinions.

The ALJ also rejected Dr. Christ's opinions because they were based on a 2014 MRI that did not show significant change from a 2013 MRI. AR 21-22. The 2014 MRI was the only "inconsistency in the record" that the ALJ cited with specificity. The record reflects that Cordes' back was in a severe state in 2013. The fact that the MRI was unchanged was not an inconsistency. Instead, it was evidence of a chronic injury to Cordes' back. In light of the nature of the 2013 MRI, the fact that his back did not get better or worse in 2014 is not "good reason" to reject Dr. Christ's opinion. Overall, the ALJ's failed to identify inconsistencies constituting a "good reason" to reject Dr. Christ's opinion.

The ALJ also suggested that Dr. Christ's short treatment history and lack of objective testing were "good reasons" to reject her opinion. First, it must be mentioned that Cordes testified to a meeting with Dr. Christ prior to writing the opinion letter, during which she performed objective testing. AR 76. It is not clear when this testing occurred or whether Dr. Christ made a separate record of the testing. Further, elsewhere in her opinion the ALJ discussed objective testing results obtained by Dr. Christ without crediting them to Dr. Christ. It is also clear from the record that Dr. Christ formed her opinions by reviewing medical records from Dr. Delbridge and from Dr. Foad Elahi, M.D. AR 533. In that respect, Dr. Christ was acting as both a consulting examining expert, as well as a treating physician. Because an ALJ is free to accept the opinion of a consulting expert who has never treated the claimant, *Prosch v. Apfel,* 201 F.3d at 1014, it stands to reason that an ALJ may accept opinions formed by a treating physician who has also reviewed other physician's records.

Regardless, there is no requirement that support for Dr. Christ's opinion be found within her own records. The record must be evaluated as a whole to determine whether the treating physician's opinion should control. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009). Throughout the record, objective testing by Cordes' treating doctors confirms the severity of his physical impairments. In December 2012, Cordes had "4/5 strength on right foot dorsiflexion/plantar flexion and extension of right leg," along with decreased sensation in his right foot and decreased right patellar reflexes compared to the left. AR 485. In February 2013, Cordes was observed to have flexion weakness in the right leg and decreased sensation along the right foot. AR 494. A straight leg test for the right leg was positive, and the leg was painful upon palpation. *Id.*

An MRI in January 2013 showed scar tissue infringing on the S1 nerve root, leading Dr. Adam Jackson, M.D., to diagnose Cordes with "mild L5 and severe S1 radiculopathy on the right." *Id.* This diagnosis was confirmed by EMG and nerve conduction studies performed in July 2013. AR 507. For the next two years, Cordes

had continuing weakness in his right leg, including decreased sensation and reflexes in October 2013, AR 544, 2/5 knee and ankle strength in April 2014, AR 539, and 3/5 right leg strength in June 2014. AR 536. Judge Williams found the ALJ's treatment of Dr. Christ's opinion was supported by the evidence because Dr. Christ's opinion noted reflex loss and positive straight leg raising tests that were not contained in her own notes. Doc. No. 18 at 12. However, the reported reflex loss and positive straight leg test are consistent with and supported by the records that Dr. Christ reviewed. AR 485, 544 (demonstrating reflex loss), AR 494, 617 (positive straight leg tests), AR 533 (demonstrating Dr. Christ's review of these records). The fact that Dr. Christ reached these specific conclusions by relying on the records of other physicians is not a good reason to reject her opinion. The ALJ's claimed "lack of objective testing" is not borne out by the record and, therefore, is not a "good reason" to discount Dr. Christ's opinion.

Finally, the ALJ rejected some of Dr. Christ's more severe restrictions based on a finding that Dr. Christ relied heavily on Cordes' subjective complaints. AR 22. Cordes testified that he suffered debilitating pain, stating that he had pain in his hips and right leg, stabbing pressure in his back and no feeling in the bottom of his right foot. AR 73. Cordes' pain was at a 10/10 most of the time. AR 73-74. Sitting, standing and walking made his pain worse. AR 74. The only relief for his back pain came from using a hot tub, which Cordes testified to doing three to four times a day. *Id.* The ALJ stated that Cordes "exhibited pain behaviors that were not in proportion with the objective findings at times." AR 22. The ALJ determined that Cordes pain was not proportional because he "exhibit[ed] significant pain behavior" during an office visit, an injection and physical therapy, AR 18, and because Cordes was "given a pain psychological referral." AR 19. As a result, the ALJ found that Cordes' "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 17.

These facts do not support a finding that Cordes was not a credible source for the severity and persistence of his symptoms. The ALJ refers to "non-organic categories"

assessed by the physical therapist in 2013. AR 18, 519. Cordes argues that these "non-organic" pain categories are not findings of malingering or dishonesty about the extent of his symptoms, but rather evidence of a psychological aspect to pain. Doc. No. 13 at 13-14. Regardless of what these "non-organic" categories show, the ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not support them." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Further, the fact that Cordes was referred to a pain psychologist has no bearing on his credibility in this case. The referral in question is a common-sense response to the psychological aspects of Cordes' pain. Indeed, Dr. Elahi explained to Cordes that "depression and mood disorder [are] a great burden and . . . a great obstacle to any modality of treatment." AR 545. The ALJ determined that Cordes has severe impairments of depressive disorder and generalized anxiety disorder. Living with chronic pain can cause anxiety and depression, and psychological stress may cause increased pain. The fact that there is a psychological impact to Cordes' pain is not a reason to reject claims of pain where his severe impairments are interacting with each other. 20 C.F.R. 416.945(e). *Miller v. Colvin*, 943 F. Supp. 2d 961, 969 (N.D. Iowa 2013). Dr. Christ's reliance on Cordes' subjective complaints is not a "good reason" to discount her limitations. Instead, it reflects the ALJ's failure to consider the combination of Cordes' impairments, as discussed further below.

In short, the ALJ did not identify sufficient "good reasons" to discount Dr. Christ's opinion. *Reed v. Barnhart*, 399 F.3d 917, 921-22 (8th Cir. 2005). Cordes' objection is sustained.

***The Chowdhry-Boling opinion.*** Cordes sought mental health treatment at Black Hawk-Grundy Mental Health Center (BHG) for the first time on February 3, 2014. AR 557. Cordes was sent to BHG on the recommendation of his wife, and stated that "[h]is attorney also wanted him to get evaluated, because he is applying for disability." *Id.*

After the initial appointment with Joyce Andresen, L.I.S.W., Cordes attended twelve sessions with another social worker, Richard D. Anfinson, L.I.S.W., and seven sessions with Ms. Boling. AR 557-606. Cordes was diagnosed with depressive disorder, panic disorder without agoraphobia, and generalized anxiety disorder. AR 558.

Throughout his treatment, Cordes received counseling, education on coping strategies, several prescriptions and medication management. AR 557-606. From the record, it appears that Ms. Boling authored an opinion on December 3, 2014, which Dr. Chowdhry signed a few days later. AR 613. Dr. Chowdhry never treated Cordes. AR 557-606. Dr. Chowdhry and Ms. Boling opined that Cordes was severely limited by his mental impairments. AR 608-13. Specifically, they found that Cordes would be unable to tolerate the stress of various work demands, including speed, precision, complexity, deadlines, making decisions, completing tasks, dealing with the public, being criticized by supervisors, remaining at work for a full day, and fear of failure at work. AR 609. They reported that Cordes would miss more than four days of work per month and would have difficulty with thinking and concentrating, short term memory impairment, decreased energy and generalized persistent anxiety. AR 609-10. They further found that Cordes would be unable to meet competitive standards in maintaining regular attendance, completing a workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace and dealing with normal work stress. AR 611.

The ALJ gave the Chowdhry-Boling opinion "some weight." AR 21. The ALJ stated that "Dr. Chowdhry and Ms. Boling appeared to at least partially base their opinions on the claimant's complaints of physical pain and not on mental health symptoms." *Id.* Because "this was not the primary purpose of their treatment interaction with the claimant and not within their treating specialty," the ALJ gave little weight to that portion of their opinion." *Id.* Additionally, the ALJ focused on various data points from Cordes' treatment records during which his mental impairments may have been

improving, and concluded that these were inconsistent with disabling impairments. AR 20. The ALJ did not evaluate whether Dr. Chowdhry was truly a "treating source" or whether Ms. Boling's opinion constituted an acceptable medical source statement. Doc. No. 18 at 16.

Although the record must be evaluated as a whole to determine the proper weight to be given to the Chowdhry-Boling opinion, *Pelkey*, 433 F.3d at 577, the court "may not uphold an agency decision based on reasons not articulated by the agency," when "the agency [has] fail[ed] to make a necessary determination of fact or policy" upon which the court's alternative basis is premised." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (quoting *Healtheast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998)). Here, it may have been appropriate for the ALJ to discount the Chowdhry-Boling opinion on grounds that Dr. Chowdhry did not examine Cordes and Ms. Boling is not an acceptable medical source. Because the ALJ did not articulate this reason, however, I will not consider it.

The ALJ rejected the portions of the Chowdhry-Boling opinion that were based on Cordes' reports of physical pain, because it was "not within their treating specialty." AR 21. This conclusion is inconsistent with Cordes' treatment records. First, Cordes was referred to a pain psychologist. AR 545. Although it appears that Cordes did not follow through on Dr. Elahi's referral and instead sought mental health treatment at the county medical center, Cordes cannot be penalized for seeking treatment that he could more easily afford. *Tome*, 724 F.2d at 714. Further, the vast majority of Cordes' conversations with Mr. Anfinson and Ms. Boling revolved around his pain: how his pain limited his daily activities causing him anxiety and depression, how his inability to afford treatment made his mental problems worse and how his mental impairments fed into his experience of physical pain. *See* AR 557-606. It is well established that an ALJ may not disregard psychological pain merely because it appears to be out of proportion with objective medical findings. *Reinhart v. Sec. of Health & Human Srvs.*, 733 F.2d 571,

572-73 (8th Cir. 1984). The alleged imposition of restrictions "not within their treating specialty" is not a good reason to discount the Chowdhry-Boling opinion.

Because the ALJ failed to give good reasons for discounting the Chowdhry-Boling opinion, the Commissioner's ruling must be reversed. *Reed*, 399 F.3d at 921-22. Accordingly, Cordes' objection is sustained.

## B.   *Support of the Evidence for the RFC Finding*

Cordes' final objection is that the ALJ's RFC determination is not supported by substantial evidence in the record as a whole. Cordes argues that because the ALJ gave little weight to his treating physician's opinions and relied generally on the medical record and state agency consulting experts alone, the ALJ's conclusion was unsupported. Doc. No. 19 at 10 (citing *Fitzgerald Morris v. Colvin*, No. 16-CV-4068-LTS, 2016 WL 3360506 at *10 (N.D. Iowa, June 16, 2016)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis*, 353 F.3d at 646; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.145(a)(3), 416.945(a)(3). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Because I have determined that the ALJ erred in discounting Dr. Christ's opinion and the Chowdhry-Boling opinion, I need not address this issue at length. It is clear that the ALJ's errors in evaluating the opinion evidence stems from a basic failure to consider Cordes' disabling impairments in combination. "Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are . . . entitled to have their disabilities measured in terms of their total physiological well-being." *Layton v. Heckler,* 726 F.2d 440, 442 (8th Cir. 1984) (quoting *Landess v. Weinberger,* 490 F.2d

1187, 1190 (8th Cir. 1974)).  Because the ALJ failed to consider Cordes' mental and physical impairments in combination, the resulting RFC is not supported by substantial evidence.  *Lewis*, 353 F.3d at 646.  Cordes' objection is sustained.

## V.   CONCLUSION

For the reasons set forth herein:

1.      Plaintiff Bradley W. Cordes' objections (Doc. No. 19) to the Report and Recommendation (Doc. No. 18) are **sustained** and the Report and Recommendation is **not adopted**.  *See* 28 U.S.C. § 636(b)(1).

2.      The Commissioner's determination that Cordes was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this opinion.

3.      Judgment shall enter in favor of the plaintiff and against the defendant.


**IT IS SO ORDERED.**

**DATED** this 8th day of September, 2017.


_____

Leonard T. Strand, Chief Judge